Daryl and Peggy BRUMAGE, Appellees,

v.

Richard A. WOODSMALL, John
Williamson, John McIsaac, and
the State of Iowa, Appellants,

and

The Board of Stewards, The Iowa State
Racing Commission, Aim, Inc., and
Delbert Reed, Defendants.

No. 88–910.

Supreme Court of Iowa.

July 19, 1989.

As Corrected Aug. 28, 1989.

Thomas J. Miller, Atty. Gen. and Charles
S. Lavorato, Asst. Atty. Gen., for appellants.

Stephen A. Rubes, Council Bluffs, for
appellees.

Considered by McGIVERIN, C.J., and
HARRIS, CARTER, SNELL, and
ANDREASEN, JJ.

SNELL, Justice.

This is an interlocutory appeal by defendants Richard Woodsmall, John Williamson, John McIsaac, and the State of Iowa from a district court order that overruled portions of their motion to dismiss. The portions of the motion to dismiss that were sustained by the court's order have not been appealed by plaintiffs, Daryl and Peggy Brumage. We affirm in part, reverse in part, and remand.

The principles governing our review are as follows. A motion to dismiss is sustainable only when the pleadings make

certain that the pleader has failed to state a claim on which any relief can be granted under any state of facts provable under the allegations. *Ladd v. Iowa West Racing Ass'n,* 438 N.W.2d 600, 600–01 (Iowa 1989); *Rittscher v. State,* 352 N.W.2d 247, 250 (Iowa 1984). We therefore take plaintiffs' allegations in their petition as true and construe the allegations in the light most favorable to them. *Ladd,* 438 N.W.2d at 601; *Clark v. Mincks,* 364 N.W.2d 226, 228 (Iowa 1985).

Viewed with these principles in mind, the record reveals the following facts. In early 1987, plaintiffs, who are residents of Colorado, were the holders of a kennel license at the Bluffs Run dog track in Council Bluffs, Iowa. On March 23, 1987, plaintiffs' kennel was closed by the Iowa State Racing Commission and the Board of Stewards upon charges of race fixing, and on April 6, their license was suspended. On April 13, the commission cleared plaintiffs of these allegations and dropped all charges. However, on that same day, defendant Williamson, the presiding judge of the board, terminated the contract between the track and plaintiffs' kennel and retained another kennel to replace plaintiffs' kennel. This decision was concurred in by defendants Woodsmall and McIsaac, the other members of the board.

Plaintiffs thereafter brought this action against AIM, Inc., the operator of the track; Delbert Reed, the general manager of the track; the State; the commission; the board; and the individual board members. Plaintiffs did not file a claim with the state appeal board. Plaintiffs' petition was in sixteen divisions, the latter six directed at AIM, Reed, and Williamson. These latter divisions are not at issue on this appeal. Plaintiffs' first ten divisions were directed at all of the defendants except AIM and Reed, and alleged in the following order: (1) general allegations, (2) intentional interference with business relations, (3) abuse of process, (4) malicious prosecution, (5) intentional infliction of severe emotional distress, (6) libel and slander, (7) negligent investigation, prosecution, and suspension of plaintiffs' license, (8) punitive damages, (9) violation of plaintiffs' civil rights and (10) interference with prospective business relations.

In their motion to dismiss, defendants challenged these claims on multiple grounds, including numerous defenses under Iowa Code chapter 25A, the Iowa Tort Claims Act. The district court determined that plaintiffs' claims were subject to chapter 25A. The court therefore ruled that the board and the commission, as state agencies, were exempt from suit, pursuant to section 25A.16. The court also ruled that the State was immune from liability for all of plaintiffs' claims except their emotional distress, negligence, and civil rights claims, pursuant to section 25A.14(4). Plaintiffs' punitive damages claim against the State was barred by section 25A.4. On the claims remaining, the court directed plaintiffs to comply with the procedural provisions of chapter 25A.

Plaintiffs did not appeal these rulings. Defendants Woodsmall, Williamson, McIsaac, and the State contend the district court erred by not dismissing all of the first ten divisions of plaintiffs' petition.

■ I. As an initial matter, we must determine whether plaintiffs' remaining claims are cognizable "claims" under chapter 25A. Section 25A.2(5) defines "claim" as:

> a. Any claim against the state of Iowa for money only, on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the state while acting within the scope of the employee's office or employment, under circumstances where the state, if a private person, would be liable to the claimant for such damage, loss, injury or death.
>
> b. Any claim against an employee of the state for money only, on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the state while acting within the scope of the employee's office or employment.

Section 25A.2(4) defines "acting within the scope of the employee's office or employment" as "acting in the employee's line of duty as an employee of the state."

Although plaintiffs requested judgment against Woodsmall, Williamson, and McIsaac individually and in their official capacities, plaintiffs' allegations only related to actions taken by the board. Plaintiffs alleged the conduct giving rise to these claims involved the investigation and prosecution of plaintiffs by the stewards, including unspecified statements made by them, and concluded when "John Williamson, the presiding judge of the Board of Stewards, wrongfully terminated the contract between the Brumage Kennel and Bluffs Run and retained another kennel to replace the Brumage Kennel ... [and] Richard Woodsmall and John McIsaac concurred in that decision." Although plaintiffs contended this action was wrongful, at no point did they assert it was beyond the scope of the stewards' employment. Nor did plaintiffs allege any action by these individuals that was taken outside their capacity as stewards. In fact, in each of plaintiffs' prayers, they also sought judgment against the board, the commission, and the State for the conduct of the individual defendants.

We conclude plaintiffs' claims fall within the ambit of section 25A.2(5) and therefore are governed by the provisions of chapter 25A.

■ II. Defendants contend the failure of plaintiffs to exhaust their remedies under section 25A.5 before filing this action in district court deprived the court of jurisdiction. The district court's order indicated the court would refrain from acting on plaintiffs' remaining claims, pending plaintiffs' compliance with section 25A.5, which provides in pertinent part:

> No suit shall be permitted under this chapter unless the state appeal board has made final disposition of the claim; except that if the state appeal board does not make final disposition of a claim within six months after the claim is made in writing to the state appeal board, the claimant may, by notice in writing, withdraw the claim from consideration of the

state appeal board and begin suit under this chapter.

In *Feltes v. State*, 385 N.W.2d 544 (Iowa 1986), this court squarely addressed this issue. Upon plaintiff's request that we hold the matter in abeyance pending the determination of his claim by the state appeal board, we stated:

> The general rule is that in order to have jurisdiction over an action, it must exist when suit was filed. Once it is determined jurisdiction was lacking at that time, the suit must be dismissed. Nor can the court retain jurisdiction while plaintiff exhausts his remedies. If jurisdiction never existed it cannot be retained.

*Id.* at 549 (citations omitted).

The only claim not subject to this jurisdictional infirmity is plaintiffs' civil rights claim. In *Felder v. Casey*, 487 U.S. ——, ——, 108 S.Ct. 2302, 2308, 101 L.Ed.2d 123, 140 (1988), the United States Supreme Court held that Wisconsin's notice-of-claim statute for actions against the state or its subdivisions, agencies, or officers, was preempted as inconsistent with 42 U.S.C. § 1983. The Court noted that

> the notice provision operates, in part, as an exhaustion requirement, in that it forces claimants to seek satisfaction in the first instance from the governmental defendant. We think it plain that Congress never intended that those injured by governmental wrongdoers could be required, as a condition of recovery, to submit their claims to the government responsible for their injuries.

Section 25A.5 similarly acts as an exhaustion requirement and is similarly preempted. However, the district court erred by not dismissing all of plaintiffs' claims other than the civil rights claim for lack of jurisdiction.

■ III. Defendants contend the civil rights claim nonetheless should have been dismissed because they are entitled to absolute immunity due to the allegedly quasi-prosecutorial and quasi-judicial role of the stewards.

Generally executive officers are only entitled to qualified immunity in a suit for damages arising from unconstitutional action. *Malley v. Briggs*, 475 U.S. 335, 340, 106 S.Ct. 1092, 1095–96, 89 L.Ed.2d 271, 277–78 (1986); *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396, 403 (1982). There are, however, some officials whose special functions require absolute immunity, including judges and prosecutors. *Butz v. Economou*, 438 U.S. 478, 508–10, 98 S.Ct. 2894, 2912, 57 L.Ed.2d 895, 917–18 (1978).

In *Butz*, the Court stated:

We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages. The conflicts which federal hearing examiners seek to resolve are every bit as fractious as those which come to court.

. . . .

There can be little doubt that the role of the modern federal hearing examiner or administrative law judge within this framework is "functionally comparable" to that of a judge.

*Id.* at 512–13, 98 S.Ct. at 2914, 57 L.Ed. at 920. The Court therefore held that persons subject to the restraints imposed upon hearing examiners and performing adjudicatory functions within a federal agency are entitled to absolute immunity from damages liability for their judicial acts. *Id.* at 514, 98 S.Ct. at 2915, 57 L.Ed.2d at 921.

Similarly, agency officials performing functions analogous to those of a prosecutor are also able to claim absolute immunity with respect to those acts. *Id.* at 515, 98 S.Ct. at 2915, 57 L.Ed.2d at 921. The Court reasoned that a defendant in an administrative proceeding would have ample opportunity in the proceeding itself to challenge an administrator's decision to initiate a case, by presenting evidence to an impartial trier of fact and obtaining an independent judgment as to whether the prosecution was justified. *Id.* at 515–16, 98 S.Ct. at 2915, 57 L.Ed.2d at 922.

Defendants assert the provisions of the Iowa Administrative Code governing hearings before the stewards, I.A.C. § 491–4.3,

penalties that may be imposed by them, I.A.C. § 491–4.4, and appeals to the commission from their decisions, I.A.C. § 491–4.9, demonstrate the quasi-prosecutorial and quasi-judicial role of the stewards. We agree these functions have prosecutorial and judicial characteristics.

However, the rules governing the stewards' actions do not contain the safeguards found necessary in *Butz*. With respect to the stewards' prosecutorial functions, the stewards not only initiate the proceeding, they also preside over it. The defendant in the proceeding is not able initially to present his evidence to a trier of fact independent of the prosecution. And appeal of the stewards' decision will not automatically stay the decision. I.A.C. § 491–4.5. The stewards' judicial role is similarly sullied by their dual role as prosecutors. The stewards do not function as independent hearing examiners weighing the evidence presented by all interested parties. Rather, only the stewards call witnesses to testify and they need not permit these witnesses to be cross-examined. I.A.C. § 491–4.3(4). Further, although the witnesses are entitled to have counsel present at this meeting, counsel may only participate under the conditions set by the stewards. *Id.*

In this case, the limited safeguards provided by the administrative rules were obviated, in any event, by the failure of the stewards to conduct the hearing. This failure in and of itself suggests the safeguards are insufficient to justify the risk of an unconstitutional act which is inherent in the grant of absolute immunity. We conclude the stewards are only entitled to qualified immunity, pursuant to the general rule. The district court correctly refused to dismiss plaintiffs' civil rights claim.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.